[Cite as *State v. Moore*, 2016-Ohio-5267.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26304 |
| | : | |
| v. | : | T.C. NO. 13CR3327/1 |
| | : | |
| KORWYN MOORE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___5th___ day of ___August___, 2016.

. . . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Korwyn Moore was found not guilty by a jury in the Montgomery County Court of Common Pleas of one count of murder. One count of having weapons under disability was tried separately to the court, and Moore was found guilty of that offense.

He was sentenced to 36 months of imprisonment, to run consecutively to his imprisonment in a federal case.

{¶ 2} Moore appeals from his conviction for having weapons under disability. For the following reasons, the judgment of the trial court will be affirmed.

## I.   Facts and Procedural History

{¶ 3}   On the evening of May 10, 2013, and into the early morning hours of May 11, a large group gathered at The Heat nightclub in Huber Heights to remember a person who had recently died.   A fight broke out inside the club, then moved to the parking lot. Multiple gunshots were fired, and two men were killed.   Moore was present during the melee and, according to some witnesses, he had a gun in his hand and fired shots into the air.   However, no guns were found at the scene and, of the shell casings that were recovered, none could be definitively linked to Moore.

{¶ 4}   On November 6, 2013, Moore was indicted for one count of murder (proximate result of felonious assault), with a firearm specification, and one count of having weapons under disability; a co-defendant was also charged with murder.   On April 17, 2014, Moore waived his right to a jury trial with respect to the count of having weapons under disability only.   The count of murder and the separate count of murder brought against the co-defendant were tried to a jury over several days in late April and early May 2014.   Moore was found not guilty of murder by the jury, but he was found guilty by the trial court of having weapons under disability.   (The co-defendant was also found not guilty of murder.)   Moore was sentenced as discussed above.

## II.   Weight and Sufficiency of the Evidence of Having Weapons Under Disability

{¶ 5} In his single assignment of error, Moore argues on appeal that his conviction for having weapons under disability was neither supported by sufficient evidence nor supported by the weight of the evidence.

{¶ 6} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 7} An argument challenging the weight of the evidence differs from one challenging its sufficiency; an argument based on the weight of the evidence "challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins,* 78 Ohio St.3d at 387, citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 8} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of

particular witnesses. *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 9} Moore was indicted for having weapons under disability, in violation of R.C. 2923.13(A)(2), which prohibits a person from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance, if he has been convicted of any felony offense of violence. The definition of an "offense of violence" includes an offense, "other than a traffic offense, * * * committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons." R.C. 2901.01(A)(9)(c).

{¶ 10} The parties stipulated that Moore had previously been convicted in Montgomery Case No. 2010-CR-2329 of two counts of felonious assault (serious harm and deadly weapon), one count of improperly discharging a firearm at or into a habitation, and one count of discharge of a firearm on or near prohibited premises. Thus, the only issue presented to the trial court was whether Moore had knowingly acquired, had, carried, or used a firearm or dangerous ordnance on the day in question.

{¶ 11} Many witnesses testified at trial to the events and circumstances surrounding the murders, but only two witnesses testified with respect to whether Moore had a gun in his possession. (The evidence about many details of the murders, more generally, is not relevant to this appeal.)

{¶ 12} Sharie Jones was present at The Heat on the night in question and when the fight broke out. She testified that the fight moved from inside to outside the club, and that once outside, she saw Moore, who was known to her, fire a gun into the air. She testified that she believed Moore fired the gun only one time "to stop the fight but it didn't stop it." Once the shooting began, Jones ran back inside the club.

{¶ 13} Reginald Williams was also present at The Heat the night of May 10-11, when the shooting occurred. Williams operated a business taking pictures at night clubs and other events using a photo booth; he then sold the pictures to attendees. He was taking pictures at the "rest-in-peace party" at the Heat. Williams had met Moore that night and believed that Moore was a relative of the person being honored.

{¶ 14} Williams testified that a fight broke out inside the club near the photo booth around closing time. The bouncers tried to break it up and then pushed it outside into the parking lot. Williams also went outside. Williams testified that about 20 people were involved in the fight, although many more were present at the club. Once the fight had moved to the parking lot, "shots rang out." Williams saw Moore and his co-defendant, Mike Hall, with guns, but he did not believe that either of them had fired the first shot. Several rounds of shots followed, and Williams observed Moore shooting into the air. Williams testified that at least one additional shooter was also in the lot, but Williams did not know this individual. Other people were fighting with broken bottles and pool sticks, and Williams saw one man on the ground with a gunshot wound.

{¶ 15} Jones and Williams each testified about Moore's approximate location in the parking lot when he fired his gun. A police department evidence technician also testified to finding shell casings at that location (among others).

{¶ 16} Jones and Williams were each cross-examined extensively, including about their own prior convictions, their relationships with those present at the club, their perspectives on observing the events as those events unfolded, and, in Williams's case, his withholding of some information during his initial interview with the police. Both witnesses testified with certainty that they had seen Moore firing a gun into the air, but had not seen him shoot at anyone in the parking lot. Jones believed that Moore had fired the first shot, whereas Williams believed that Moore had not fired the first shot or shots.

{¶ 17} Viewed in the light most favorable to the State, and keeping in mind Moore's stipulation to his prior offenses of violence, the State had presented adequate evidence on each element of the offense to sustain a conviction for having weapons under disability. Based on Jones's and Williams's testimonies, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, Moore's conviction was supported by sufficient evidence.

{¶ 18} Moreover, the trial court could have reasonably credited the testimonies of Jones and Williams as to Moore's actions that evening. Neither witness seemed to have any grudge or bias against Moore; in fact, their testimonies vindicated Moore on the more serious charge of murder, because both stated that he had only fired into the air. Although there were inconsistencies in the testimony with respect to the order in which shots were fired during a very chaotic situation, these inconsistencies had no direct bearing on the question of whether Moore had possessed a gun. The trial court did not clearly lose its way or create a manifest miscarriage of justice in crediting this testimony, and Moore's conviction was not against the manifest weight of the evidence.

{¶ 19} The assignment of error is overruled.

### III.     Conclusion

**{¶ 20}**   The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Andrew T. French
Mark A. Fisher
Hon. Dennis J. Langer