[Cite as *State v. Hartings*, 2018-Ohio-2035.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   27471 |
| | : | |
| v. | : | T.C. NO. 2016-CR-2701 |
| | : | |
| **BRIAN HARTINGS** | : | (Criminal Appeal from |
| | : |   Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 25th day of May, 2018.

. . . . . . . . . . .

HEATHER JANS, Atty. Reg. No 0084470, Assistant Prosecuting Attorney, 310 West Third Street, 5TH Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BEN M. SWIFT, Atty. Reg. No. 0065745, P.O. Box 49637, Dayton, Ohio 45449
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Brian Hartings appeals his conviction and sentence for one count of rape (by force or threat of force), in violation of R.C. 2907.02(A)(2), a felony of the first degree. Hartings filed a timely notice of appeal with this Court on February 21, 2017.

{¶ 2} The incident which forms the basis for the instant appeal occurred late in the morning on August 28, 2016, when the victim, seventeen year old A.B., and her then-boyfriend, D.B., walked over to a residence located on a street in Dayton, Ohio. The residence in question belonged to D.B.'s aunt, J.B. J.B. lived in the house with the defendant, Hartings, who was her boyfriend. Hartings was forty-two years old at the time the offense occurred. J.B. and Hartings had been in a relationship for approximately twenty years and had five children together. A.B. was friends with the three youngest children of J.B. and Hartings.

{¶ 3} On the day in question, A.B. and D.B. had an argument while walking over to J.B.'s residence. A.B. testified that upon reaching the house, they encountered Hartings sitting on the front porch smoking a cigarette. At this point, D.B. left to go and meet some friends. After D.B. left, A.B. and Hartings walked to the back porch and smoked cigarettes together. Although A.B. went to the house to visit Hartings' daughters, he told her that they were still asleep and not to wake them. A.B. testified that she did not leave at this point because D.B. would get angry with her because he did not have a cellphone with him allowing her to contact him if she were to leave.

{¶ 4} A.B. testified that while they were sitting on the back porch, Hartings began rubbing her thighs and telling her that she was sexy. A.B. informed Hartings that he was

making her uncomfortable, and he stopped. Shortly thereafter, however, Hartings began rubbing A.B.'s breasts. A.B. again told Hartings that he was making her feel uncomfortable, and she got up and went into the living room of the house. Once inside, A.B. sat down on the sofa and waited for her friends to wake up and come downstairs. Hartings followed A.B. inside the house and sat down beside her on the sofa where he began rubbing her thighs and telling her again that she was sexy. A.B. told Hartings that he was making her uncomfortable, but he did not respond.

{¶ 5} While she was sitting in the living room, A.B. testified that she placed her cellphone on a coffee table near the sofa. Without her permission, Hartings picked up A.B.'s cellphone and went downstairs to the basement of the house. When A.B. went downstairs to retrieve her cellphone, Hartings grabbed her arm and attempted to kiss her. A.B. testified that she backed away from Hartings and told him that she felt uncomfortable. Hartings responded by "shushing her" and telling her to be quiet. Hartings then tried to kiss A.B. again and pulled her over to a pool table that was located in the basement. Once there, Hartings pushed A.B. down onto the pool table and started taking off her pants. Again, A.B. told Hartings that she was uncomfortable, and she attempted to push him off of her.

{¶ 6} Undeterred, Hartings pulled off A.B.'s underwear and placed his penis inside her vagina. When the assault first began, A.B. was laying on her back on the pool table. At some point, Hartings turned A.B. over on her stomach and continued the sexual assault. Hartings then turned A.B. onto her back again and ejaculated on her chest. A.B. testified that Hartings did not wear a condom during the assault. When the assault was over, Hartings told A.B. "to be quiet or else she might get some more." A.B. put her

clothes back on, retrieved her cellphone, and went back outside to the front porch to wait for D.B. As she left the house, A.B. said goodbye to one of Hartings' daughters who had apparently awoken. A.B. testified that while she waited for D.B. on the front porch, Hartings came outside and smoked a cigarette.

{¶ 7} After approximately five minutes, D.B. returned, and he and A.B. left Hartings' residence on foot. A.B. and D.B. walked behind a nearby library where she told him what had occurred. D.B. immediately suggested that they walk to a nearby restaurant where his aunt, J.B., worked and tell her what happened. As the two walked to the restaurant, A.B. became aware that she had recorded a portion of the sexual assault on her cellphone. The recording contains only sound and no images of the assault. A.B. testified that she and D.B. listened to the recording before meeting J.B. At trial, the jury heard the audio portion of the phone recording which had been transferred to compact disc. State's Ex. 15-A.

{¶ 8} A.B. testified that the recording, which lasts approximately three minutes, was made while A.B. and Hartings were in the basement on August 28, 2016. In the recording, A.B. tells Hartings several times that she "can't do this." A.B. can also be heard telling Hartings that she is very uncomfortable and that she "can't do anything" with him. A.B. also tells Hartings "no" several times, and she also asks him to "get off" of her. A.B. testified that she was unaware how the phone started recording because the screen appeared to be blank when she retrieved her phone from the basement.

{¶ 9} A.B. and D.B. reached the restaurant at approximately 1:00 p.m. and told J.B. what had occurred. J.B. also listened to the recording on A.B.'s cellphone. At approximately 2:00 p.m., J.B. called Hartings and questioned him about the assault. J.B.

testified that Hartings feigned ignorance regarding the alleged assault but sounded nervous. J.B. also told Hartings that the police had been called and were on their way to the house. J.B. left work early and went directly home to her residence. J.B. testified that when she arrived, the street had been blocked off by the police, and Hartings had barricaded himself inside the house. Hartings eventually came outside and was arrested and taken into custody. J.B. gave the police consent to search her house.

{¶ 10} After speaking with J.B. at the restaurant, A.B. went home and told her mother that she had been sexually assaulted by Hartings. A.B.'s mother called the police and took A.B. to Dayton Children's Hospital. A.B. spoke to the police at the hospital and provided them with a written statement.

{¶ 11} After being arrested, Hartings was transferred to the Safety Building where he was interviewed by Dayton Police Detective Joshua Spears from the Special Victim's Unit. Prior to answering any questions, Hartings was informed of his Miranda rights by Detective Spears, after which Hartings read and signed a pre-interview waiver form. Upon being questioned as to why he had been arrested, Hartings stated that someone accused him of rape, but he did not know who the accuser was. Eventually, Hartings informed Det. Spears that A.B. had accused him of raping her. Initially, Hartings denied that any contact, sexual or otherwise, took place between A.B. and himself. After Det. Spears informed him that there was a video recording of the assault, Hartings admitted that he engaged in sexual conduct with A.B., but stated that it was consensual in nature. Hartings also initially stated that A.B. took off her own pants and underwear, but he later changed his story and stated that he had removed A.B.'s pants and underwear at the same time before having sex with her. Hartings also stated that at no point did A.B. say

"no" or tell him to stop.

{¶ 12} Thereafter, on September 7, 2016, Hartings was indicted for one count of rape (by force or threat of force). At his arraignment on September 13, 2016, Hartings stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 13} On September 28, 2016, Hartings filed a motion to suppress any statements he made to law enforcement officials after being arrested on August 28, 2016. A hearing was held on said motion on November 10, 2016. On November 22, 2016, the trial court issued a decision overruling Hartings' motion to suppress. On January 3 and 6, 2017, the State filed a motion in limine in which it sought application of the Rape Shield Law. On January 6, 2017, the trial court granted the State's motion in limine.

{¶ 14} The case proceeded to a jury trial beginning on January 17, 2017, and lasting until January 20, 2017, whereupon Hartings was found guilty of rape. The trial court ordered the adult probation department to prepare a pre-sentence investigation report (PSI). On February 2, 2017, Hartings was designated as a Tier III sexual offender. On February 6, 2017, the trial court sentenced Hartings to a mandatory ten years in prison.

{¶ 15} It is from this judgment that Hartings now appeals.

{¶ 16} Hartings' first assignment of error is as follows:

{¶ 17} "THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN HARTINGS' CONVICTION FOR RAPE."

{¶ 18} In his first assignment, Hartings contends that the State failed to adduce sufficient evidence to support his conviction for rape, in violation of R.C. 2907.02(A)(2).

Under this section, to obtain a conviction for rape, the State must prove beyond a reasonable doubt that the accused engaged in sexual conduct with another by purposely compelling the other person to submit to the sexual conduct by force or threat of force. Specifically, Hartings argues that A.B.'s testimony that she did not consent to the sexual conduct was not credible and that the evidence was insufficient to establish the element of force or threat of force. Additionally, Hartings argues that his rape conviction is against the manifest weight of the evidence.

{¶ 19} Although the State does not raise the issue, we note that the record fails to establish that Hartings renewed his Crim. R. 29 motion for acquittal at the close of all the evidence in his jury trial. Here, Hartings moved for acquittal at the close of the State's case-in-chief, the trial court denied the motion, and Hartings then presented the testimony of one witness for the defense. After resting, the printed record provided to this Court does not indicate that Hartings renewed his Crim. R. 29 motion for acquittal. Hartings has therefore failed to preserve his insufficiency argument by not renewing it at the close of evidence. *See State v. Richardson*, 2016-Ohio-8081, 75 N.E.2d 831, ¶ 16 (2d Dist.); *see also State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 42 (appellant preserved his insufficiency argument by making an unsuccessful Crim. R. 29 motion for acquittal at the close of evidence at trial). It is generally accepted in Ohio that if counsel fails to make and renew a Crim. R. 29 motion during a jury trial, the issue of sufficiency is waived on appeal. *State v. Beesler*, 11th Dist. Ashtabula No. 2002–A–0001, 2003-Ohio-2815, ¶ 23. However, even if Hartings had renewed his Crim. R. 29 motion, we conclude that his argument that his conviction for rape was based upon insufficient evidence lacks merit.

{¶ 20} A challenge to the sufficiency of the evidence presents a question of law as to whether the State has presented adequate evidence on all elements of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 41 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 21} Pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Therefore, in a rape case, to prove that the defendant acted "purposely," the State must prove that it was the defendant's intention to engage in sexual conduct by forcefully compelling the other person to submit to the sexual conduct. "A rape occurs only if the perpetrator purposely compels the other to submit by force or threat of force." *State v. Wilkins*, 64 Ohio St.2d 382, 385, 415 N.E.2d 303 (1980).

{¶ 22} Ohio's rape statute does not require proof of the victim's lack of consent. Ohio law does recognize certain victims incapable of giving consent, based on mental or physical incapacity. Those exceptions do not apply in the case before us. *See, e.g.,*

*State v. Hillock*, 7th Dist. Harrison No. 02–538–CA, 2002-Ohio-6897. Consent is not an affirmative defense, but when applicable, consent is used as a defense to challenge the State's evidence on the element of purposeful force or compulsion. *State v. El–Berri*, 8th Dist. Cuyahoga No. 89477, 2008-Ohio-3539, ¶ 57. When consent is raised as a defense to a charge of rape, the test of whether consent negates a finding of force is not whether a reasonable person confronted with similar circumstances would have understood that the victim did not consent, but rather, the test requires the trier-of-fact to find, beyond reasonable doubt, that the defendant's specific purpose or intent was to commit the crime of rape. *State v. Mundy*, 99 Ohio App.3d 275, 650 N.E.2d 502 (2d Dist.1994). As we discussed in *Mundy*:

> The determination of a defendant's mental state, absent some comment on his or her part, must of necessity be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. This is, in fact, the well-recognized process of inferential reasoning. This process by necessity incorporates an objective mechanism or standard in determining the defendant's state of mind by the use of circumstantial evidence. The trier of fact reviews the defendant's conduct in light of the surrounding facts and circumstances and infers a purpose or motive.

*Id.*, 99 Ohio App.3d at 288, 650 N.E.2d 502.

{¶ 23} R.C. 2901.01(A)(1) defines "force" as any "violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." It has been recognized that proof of physical violence or physical resistance is not required to

establish rape if the defendant creates in the mind of the victim the belief that physical force will be used if the victim does not submit. *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711, ¶ 21, and ¶ 16, citing *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Umphries* at ¶ 16, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985).

{¶ 24} In *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519 (2d Dist.), we found the force element of the rape offense to be satisfied because the defendant was significantly larger than the victim. *Id.* at ¶ 30. Additionally, the victim testified that she was scared because she was not as strong as the defendant, and she believed that he would use his superior strength to hurt her if she did not submit to his sexual advances. *Id.* Moreover, the victim testified that she repeatedly said "No" to the defendant during the sexual assault. *Id.* The physical force described by the victim included her testimony that the defendant "pushed" her onto the bed, removed her clothing, laid on top of her, and "pulled" her into the shower. *Id.*

{¶ 25} Initially, we note that at the time of the sexual assault, A.B. was seventeen years old; Hartings was forty-two years old. A.B. knew Hartings because he is the father of three children who were her friends. A.B. testified that she viewed Hartings "more as [her] uncle."

{¶ 26} A.B. testified that her sole reason for going to Hartings' house on August 28, 2016, was to visit his three daughters. While on the back porch smoking, Hartings began rubbing A.B.'s thighs and telling her how sexy she was. A.B. testified that she told Hartings that she felt uncomfortable. Hartings stopped rubbing her thighs, but only a moment later, he began rubbing her breasts. A.B. again told Hartings that she felt uncomfortable. At this point, A.B. got up, went inside the house, and sat in the living room where she testified that she was waiting for her friends to wake up. Hartings followed A.B. inside the house and began rubbing her thighs again. Once more, A.B. told Hartings that she was uncomfortable, but he did not respond. A.B. testified that she did not leave at this point because she was worried that D.B. would get angry with her because he did not have a cellphone with which to contact her.

{¶ 27} As previously stated, A.B. testified that she placed her cellphone on a coffee table near the sofa. Hartings picked up A.B.'s cellphone and went downstairs to the basement of the house. When A.B. went downstairs to retrieve her cellphone, Hartings grabbed her arm and attempted to kiss her. A.B. testified that she backed away from Hartings and told him that she felt uncomfortable. Hartings responded by "shushing her" and telling her to be quiet. Hartings then tried to kiss A.B. again and pulled her over to a pool table that was located in the basement. Once there, Hartings pushed A.B. down onto the pool table and started taking off her pants. Again, A.B. told Hartings that she was uncomfortable, and she attempted to push him off of her.

{¶ 28} At this point, Hartings pulled off A.B.'s underwear and placed his penis inside her vagina. When the assault first began, A.B. was laying on her back on the pool table. At some point, Hartings turned A.B. over on her stomach and continued the sexual

assault.  Hartings then turned A.B. onto her back again and ejaculated on her chest. When the assault was over, Hartings told A.B. "to be quiet or else she might get some more."

**{¶ 29}** The recording of the sexual assault from A.B.'s cellphone supports her testimony regarding Hartings' conduct.   In the recording, A.B. tells Hartings several times that she "can't do this."   A.B. can also be heard telling Hartings that she is very uncomfortable and that she "can't do anything" with him.   A.B. also tells Hartings "no" several times, and she also asks him to "get off" of her.   A.B. testified that she was scared throughout the entire ordeal and did not know how to respond to Hartings.

**{¶ 30}** Construing the evidence presented in a light most favorable to the State, as we must, we conclude that a rational trier of fact could find all of the essential elements of the crime of rape to have been proven beyond a reasonable doubt, including that Hartings compelled A.B. to submit by force or threat of force.   Hartings' rape conviction is therefore supported by legally sufficient evidence.

**{¶ 31}** Finally, Hartings' conviction is not against the manifest weight of the evidence.   The credibility of the witnesses and the weight to be given their testimony were matters for the jury to resolve.   The jury did not lose its way simply because it chose to believe the testimony of the victim, A.B., who testified at length regarding Hartings forcing her to submit to penile rape.   Given the discrepancy in age between A.B., a minor, and Hartings, their quasi-familial relationship, and A.B.'s testimony regarding Hartings' refusal to stop after being told "no" and "get off" several times, we cannot clearly find that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice has occurred.

**{¶ 32}** Hartings' first assignment of error is overruled.

**{¶ 33}** Hartings' second assignment of error is as follows:

**{¶ 34}** "HARTINGS' 10-YEAR SENTENCE IS CONTRARY TO LAW BECAUSE THE TRIAL COURT FAILED TO CONSIDER THE SENTENCING GUIDELINES."

**{¶ 35}** In his second and final assignment of error, Hartings argues that his ten-year sentence is contrary to law because the trial court failed to properly consider and apply R.C. 2929.11, which governs the overriding purposes of felony sentencing, and R.C. 2929.12, which sets forth the seriousness and recidivism factors for the court to consider in imposing sentence. We note that Hartings concedes that his ten-year sentence is within the applicable statutory range and is one year less than the maximum sentence of eleven years.

**{¶ 36}** As this Court has previously noted:

"This court no longer applies an abuse of discretion standard when reviewing felony sentences, as the Supreme Court of Ohio has made clear that felony sentences are to be reviewed in accordance with the standard set forth in R.C. 2953.08(G)(2)." *State v. McCoy*, 2d Dist. Clark No. 2016–CA–28, 2016–Ohio–7415, ¶ 6, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 10, 16. *Accord State v. Rodeffer*, 2013–Ohio–5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.) Under the plain language of R.C. 2953.08(G)(2), "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Marcum* at ¶ 1.

"This is a very deferential standard of review, as the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." *State v. Cochran*, 2d Dist. Clark No. 2016–CA–33, 2017–Ohio–217, ¶ 7, citing *Rodeffer* at ¶ 31.

Even before *Marcum*, we had indicated "[t]he trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give reasons for imposing maximum or more than minimum sentences." (Citation omitted.) *State v. Nelson*, 2d Dist. Montgomery No. 25026, 2012–Ohio–5759. *Accord State v. Terrel*, 2d Dist. Miami No. 2014–CA–24, 2015–Ohio–4201, ¶ 14. But "in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12." (Citations omitted.) *State v. Castle*, 2016–Ohio–4974, 67 N.E.3d 1283, ¶ 26 (2d Dist.). * * *

*State v. Folk*, 2d Dist. Montgomery No. 27375, 2017–Ohio–8105, ¶ 5–6.

{¶ 37} Initially, we note that at Hartings' sentencing hearing, the trial court made the following statement:

With that out of the way, and *considering, again, the purposes and principles of sentencing and recidivism factors of the revised code*, the Court is going to sentence Mr. Hartings to serve a period of ten years in incarceration in the State of Ohio prison system.

{¶ 38} R.C. 2929.11 requires trial courts to be guided by the overriding principles

of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 39} R.C. 2929.12(B) sets forth nine factors indicating an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious. R.C. 2929.12(D) and (E) each list five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record and "whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses."

{¶ 40} At Hartings' sentencing hearing, the trial court stated that it had received and reviewed the PSI. The trial court also stated that it had considered "the purposes and principles of sentencing and recidivism factors of the revised code," and it noted that

Hartings' rape conviction carries a mandatory prison sentence.

**{¶ 41}** As previously stated, the evidence adduced at trial established that Hartings, a forty-two year old man, forcibly raped A.B., a seventeen year old female, in the basement of his residence. A.B. testified that she considered Hartings to be "like an uncle." Therefore, the offender's relationship facilitated the offense. Additionally, Hartings' argument that A.B. never told him to stop is undermined by the recording of the sexual assault wherein A.B. clearly tells Hartings several times that she "can't do this." A.B. can also be heard telling Hartings that she is very uncomfortable and that she "can't do anything" with him. A.B. also tells Hartings "no" several times, and she also asks him to "get off" of her.

**{¶ 42}** Furthermore, Hartings' PSI discloses that he has a prior adult criminal record for theft, unauthorized use of property, and public intoxication. Hartings was also previously adjudicated delinquent for the commission of a sex offense.

**{¶ 43}** In the case at bar, the trial court imposed a sentence within the permissible statutory range. The record establishes that the trial court properly reviewed the PSI, Hartings' statement, as well as the statements of counsel. The record further establishes that the trial court considered the principles and purposes of sentencing under R.C. 2929.11, and that it balanced the seriousness and recidivism factors set forth in R.C. 2929.12. In sum, we are unable to find "by clear and convincing evidence that the record does not support the sentence," *Marcum* at ¶ 23, and the sentence is not contrary to law.

**{¶ 44}** Hartings' second assignment of error is overruled.

**{¶ 45}** Both of Hartings' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.

Copies mailed to:

Ben W. Swift
Heather N. Jans
Hon. Mary L. Wiseman