[Cite as *State v. Dyer*, 2021-Ohio-2329.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28671 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-4256 |
| | : | |
| JAMEEL DYER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of July, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by J. JOSHUA RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, 46½ North Sandusky Street, Delaware, Ohio 43015
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Jameel Dyer, appeals from his conviction in the Montgomery County Court of Common Pleas after the trial court found him guilty of one count of rape following a bench trial. In support of his appeal, Dyer contends that the trial court did not have jurisdiction to try and convict him of that offense because he did not waive his right to a jury trial in open court. Dyer also contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On November 8, 2018, a Montgomery County grand jury indicted Dyer for one count of rape by force or threat of force in violation of R.C. 2907.02(A)(2), a felony of the first degree. Dyer pled not guilty to the charge and thereafter filed a motion to suppress all statements he provided to investigating detectives. Following a suppression hearing, the trial court overruled Dyer's motion to suppress. Dyer's case then proceeded to a bench trial.

{¶ 3} At trial, the 61-year-old victim testified that she was a long-time friend of Dyer's grandfather, Jerome Carter. The victim testified that on the evening October 30, 2018, she visited Carter's residence in Dayton, Ohio. When the victim arrived at Carter's residence, Carter's grandson, Dyer, was also present. The victim had never met Dyer before, so Carter introduced the victim to Dyer that evening. After spending some time at Carter's residence, the victim briefly went to the store to play her lottery numbers. When the victim returned to Carter's residence, Dyer was sitting on the couch in Carter's front room. The victim testified that she sat down next to Dyer on the couch and that

they started talking and listening to music together. Carter was not in the front room at the time, but at the back of the house.

{¶ 4} The victim testified that her conversation with Dyer was strange because Dyer was telling her that he was the anti-Christ. Despite this, the victim kept sitting on the couch and listening to music with Dyer. The victim testified that she eventually got up from the couch in order to change the CD in the CD player. In doing so, the victim testified that she bent over to look through some CDs that were lying on the floor. The victim testified that as she was bent over, Dyer pulled her elastic pants down and "st[u]ck his fingers up [her] rectum" without her knowledge or consent. Trans. (Nov. 12, 2019), p. 49. The victim testified that it hurt when Dyer did this and that fluid started to run down her leg because she had a colonoscopy the week before.

{¶ 5} Continuing, the victim testified that she was shocked by Dyer's conduct and that she asked Dyer what he was doing. The victim testified that Dyer moaned something indiscernible in response. At that point, the victim testified that she pulled up her pants, pushed Dyer over, jumped over the couch, and went out the front door. The victim testified that as she was leaving, she saw Carter near the bathroom where he kept his condoms. The victim also thought she heard Carter say "catch that B." Id. at 52. Given these observations, the victim testified that she "felt like [she] was being set up." Id. However, the victim indicated that she was unsure whether Carter was actually involved. The victim also testified that she had only consumed two beers that evening and had her wits about her.

{¶ 6} After running out of Carter's house, the victim called 9-1-1. The 9-1-1 call was played for the trial court and admitted into evidence. During the call, the victim was

difficult to understand because she was upset and out of breath from running. The victim, however, reported to the 9-1-1 operator that Carter and his grandson had raped her and that "they went up in [her] bottom part." State's Exhibit 4 at 3:49 to 3:52. During her cross-examination, the victim clarified that although she had told the 9-1-1 operator that both Carter and Dyer had raped her, it was only one person, Dyer, who had inserted his fingers into her rectum. The victim also explained that she had felt Carter might have been involved in the incident simply because it happened at his residence.

{¶ 7} The officer who responded to the victim's 9-1-1 call testified that the victim initially reported that she had been visiting Carter and that "him and his grandson had gone up inside of her." Trans. (Nov. 14, 2019), p. 119. The officer then testified that while transporting the victim to the hospital, the victim reported that while she was at Carter's residence, Dyer "was saying some kind of weird stuff like, I'm God, I'm the anti-Christ, I'm here to save you all * * * [a]nd then at some point, while they were in the front room, the grandson flipped her over, said * * * I'm here to cleanse you, and then stuck multiple fingers up her anus." Id. at 121-122. The victim testified that she did not recall telling the officer that Dyer had flipped her over. However, both the sexual assault nurse examiner ("SANE nurse") who examined the victim and the investigating detective similarly testified that the victim had reported that Dyer flipped her over during the incident.

{¶ 8} The investigating detective testified that she interviewed Dyer after he was identified by the victim and arrested. Dyer's interview was video-recorded and the video was played for the trial court and admitted into evidence. In the video, Dyer claimed that he and the victim were listening to music and dancing in Carter's front room when Carter came into the room and pulled down the victim's pants. Dyer claimed that the victim was

apprehensive at first, but eventually helped Carter pull down her pants. Dyer stated that the victim began pushing her bare buttocks out toward him as they were dancing close together. Dyer stated that he touched the victim's buttocks, "definitely between her butt cheeks." State's Exhibit 7 at 11:51:33 to 11:51:42. Dyer also stated that his fingers were "kind of stinky" afterward and that it was possible he had fecal matter on his hand. *Id.* at 11:24:06 to 11:26:53. Because of this, Dyer agreed that it was "very possible" that his hand went up her rectum. *Id.* at 11:52:00 to 11:52:19.

{¶ 9} Carter testified in Dyer's defense and claimed that he (Carter) and the victim were boyfriend and girlfriend at the time of the incident. Carter confirmed that Dyer and the victim were drinking and socializing in his front room on the evening in question. Carter also agreed that Dyer was saying odd things like "I'm going to free you of all your demons." Trans. (Nov. 14, 2019), p. 169. Carter testified that he left the front room to use the bathroom for about 15 minutes, and that when he came back, the victim quickly left two or three minutes later. Carter claimed nothing seemed out of the ordinary when the victim left his residence. Carter also claimed that he did not know why Dyer was arrested later that evening until officers apprised him of the allegations. On cross-examination, Carter denied telling the responding officers that the victim was mad when she left his residence or that he had seen Dyer put his hand down the victim's pants.

{¶ 10} After considering the foregoing testimony and evidence, the trial court found Dyer guilty as charged and sentenced him to three years in prison. The trial court also designated Dyer as a Tier III sex offender and advised Dyer that he would be required to register as a sex offender for life.

{¶ 11} Dyer now appeals from his conviction, raising three assignments of error for

review.

## First Assignment of Error

{¶ 12} Under his first assignment of error, Dyer contends that the trial court did not have jurisdiction to try and convict him of rape because he never waived his right to a jury trial in open court as required by R.C. 2945.05. The record, however, belies Dyer's claim. On August 22, 2019, Dyer appeared at court and waived his right to a jury trial during the following discussion:

Defense Counsel:   Yeah, Judge, Jameel's going to execute a jury waiver.

Court:   A jury waiver?

Defense Counsel:   Trial [is] starting next week.

Court:   Okay. Am I pronouncing your name right, Mr. Dyer, as [Juh-'meel]?

Defendant:   Yes.

Court:   How old are you, Mr. Dyer?

Defendant:   27.

Court:   Before you sign that, let me ask you a couple of questions. Do you read and write and understand English?

Defendant:   Yes, sir.

Court:   Any reason for me to think you don't know what's happening here?

Defendant:   No.

Court:              You've been able to talk about waiving your right to a trial, where 12 people would decide your fate and say, I don't need that, I'll just be tried in the court where only one person, the judge, will?

Defendant:          Yes.

Court:              Understand that the 12 people – I'm not trying to talk you out of it, but I just want to inform you, with the 12 jurors, each one of them has to find you guilty before you can be found guilty.   Do you understand that?

Defendant:          Yes.

Court:              Got you a judge, it's just one, right?

Defendant:          Yes, right.

Court:              That's what you want to do?

Defendant:          Yes.

Court:              All right.   If that's what you want to do, there's probably a form there, a waiver form.   Why don't you go ahead and sign that, please.   [Defense Counsel], is there anything that you know about your client that would make you think that he's not competent to sign this form, today?

Defense Counsel:  Nothing at all, Your Honor.

Court:              You're not taking any medication that makes it so you don't know what's happening?

Defendant:          No, sir.

Court:          All right.   So we'll approve the time waiver – or the jury waiver, and this case will be tried to the court.  * * *

Trans. (Aug. 22, 2019), p. 2-3.

{¶ 13} Based on the foregoing, it is clear that Dyer waived his right to a jury trial in open court.  The record also establishes that Dyer and his trial counsel signed a written jury waiver, which was filed with the trial court on August 27, 2019.  Therefore, because Dyer waived his right to a jury trial in open court, Dyer's first assignment of error lacks merit and is overruled.

**Second and Third Assignments of Error**

{¶ 14} Under his second and third assignments of error, Dyer claims that his conviction for rape was not supported by sufficient evidence and was against the manifest weight of the evidence.  We disagree.

{¶ 15} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt."  (Citations omitted.)  *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).  "The verdict will not be disturbed unless the appellate court finds

that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 16} In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "However, we may determine which of several competing inferences suggested by the evidence should be preferred." *State v. Moore*, 2d Dist. Montgomery No. 26304, 2016-Ohio-5267, ¶ 8, citing *Lawson* at *4. "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 18} As noted above, Dyer was convicted of rape in violation of R.C.

2907.02(A)(2). According to that statute: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). In challenging his conviction, Dyer asserts that the State failed to present sufficient evidence establishing that he used any force or threat of force during the incident in question. Dyer is not challenging any of the other elements of rape.

{¶ 19} The term "force" as used in R.C. 2907.02(A)(2) is defined as "*any* violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." (Emphasis added.) R.C. 2901.01(A)(1). "[T]he use of the word 'any' in the definition recognizes there are different degrees of force." *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 17. " '[S]ome amount of force must be proven beyond that force inherent in the crime itself.' " *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 46, citing *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998). Such force " ' "need not be overt and physically brutal[.]" ' " *State v. Hartings*, 2d Dist. Montgomery No. 27471, 2018-Ohio-2035, ¶ 23, quoting *State v. Umphries*, 4th Dist. Ross No. 11CA3301, 2012-Ohio-4711, ¶ 16, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985). "Indeed, the force used may be subtle[.]" (Citations omitted.) *State v. Collins*, 4th Dist. Athens No. 94CA1639, 1995 WL 572907, *5 (Sept. 22, 1995); *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). For example, multiple courts, including this one, have explained that " '[t]he manipulation of a sleeping victim's clothing in order to facilitate sexual conduct constitutes force.' " *State v. Johnson*, 2d Dist. Greene No. 2009-CA-38, 2010-Ohio-2920, ¶ 18, quoting *Clark* at ¶ 17; *State v. H.H.,* 10th Dist. Franklin No. 10AP-1126, 2011-Ohio-6660,

¶ 12; *State v. Burton*, 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, ¶ 38. " 'As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.' " *Hartings* at ¶ 23, quoting *Umphries* at ¶ 16.

**{¶ 20}** That said, "[i]t is well settled that the testimony of a rape victim, if believed, is sufficient to support each element of rape." (Citation omitted.) *State v. Carpenter*, 2d Dist. Clark No. 2016-CA-66, 2017-Ohio-8905, ¶ 28. In this case, the victim testified that she was bent over looking at CDs on the floor when Dyer came up behind her, pulled down her elastic pants, and stuck his fingers inside her rectum. Dyer does not dispute that this conduct constitutes "sexual conduct" under R.C. 2907.02(A)(2), as the term "sexual conduct" includes "the insertion, however slight, of any part of the body * * * into the * * * anal opening of another." R.C. 2907.01(A). The victim testified that she "didn't know [Dyer] was going to do that" and that she was "in shock" and "caught off guard" by his conduct. Trans. (Nov. 12, 2019), p. 49 and 51. The victim also specifically testified that Dyer did not have permission to engage in such conduct.

**{¶ 21}** Upon review, we find that the victim's testimony was sufficient to establish the force element of rape. This is because the victim's testimony indicates that Dyer manipulated the victim's clothing against the victim's will in order to facilitate the sexual conduct at issue. Due to the element of surprise, Dyer's manipulation of the victim's clothing took minimal force; yet, that force went beyond the force that was inherent in the crime itself, i.e., Dyer inserting his fingers into the victim's rectum. Therefore, Dyer's act of pulling down the victim's pants while the victim was bending over was sufficient to establish the force element of rape. Dyer's claim otherwise lacks merit.

**{¶ 22}** Dyer next contends that his conviction for rape was against the manifest

weight of the evidence because the victim's testimony was inconsistent. Indeed, the record establishes that there were multiple inconsistencies between the victim's testimony and what the victim reported to the 9-1-1 operator, responding officer, investigating detective, and the SANE nurse. The inconsistencies primarily concerned whether Carter was also involved in the sexual assault, whether Dyer flipped the victim over on the couch, and what statements were made during and after the incident in question. The trial court, however, did not find that these inconsistencies were sufficient to erode the victim's credibility.

{¶ 23} As previously discussed, "we defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination." *State v. Myers*, 2d Dist. Darke No. 2019-CA-22, 2020-Ohio-4325, ¶ 23, citing *Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, at *4. "Specifically, 'in bench trials, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *Id.*, quoting *Emswiler v. Bodey*, 2d Dist. Champaign No. 2012-CA-3, 2012-Ohio-5533, ¶ 44, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 24} It is also significant that there were no inconsistencies with regard to the identity of the offender and the sexual conduct that the victim alleged occurred. Throughout the case, the victim maintained that Dyer pulled down her pants and inserted his fingers inside her rectum without her knowledge or consent. The video evidence of Dyer's interview with the investigating detective also established that Dyer admitted to touching the victim's bare buttocks "definitely between her butt cheeks" while the victim's

pants were down. State's Exhibit 7. During the interview, Dyer also told the investigating detective that it was "very possible" his fingers went up the victim's rectum since his hands were "kind of stinky" afterward. *Id.* Taking this evidence together, we cannot say that the trial court lost its way or created a manifest miscarriage of justice in believing the victim's trial testimony and finding Dyer guilty of rape.

{¶ 25} For the foregoing reasons, Dyer's second and third assignments of error are overruled.

## Conclusion

{¶ 26} Having overruled all three assignments of error raised by Dyer, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
J. Joshua Rizzo
April F. Campbell
Hon. Michael W. Krumholtz