[Cite as *State v. McComb*, 2021-Ohio-3251.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28946 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-1131 |
| | : | |
| MATTHEW J. MCCOMB | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of September, 2021.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and ANDREW SEXTON, Atty. Reg. No. 0070892, City of Dayton Prosecuting Attorneys, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

BENJAMIN W. ELLIS, Atty. Reg. No. 0092449, 817-B Patterson Road, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Matthew J. McComb, appeals from his convictions in the Dayton Municipal Court after the trial court held a bench trial and found him guilty of one count of criminal damaging and two counts of menacing. In support of his appeal, McComb argues that his conviction for criminal damaging was against the manifest weight of the evidence. For the reasons outlined below, McComb's conviction will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On March 30, 2020, McComb was charged with one count of criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree, and two counts of menacing in violation of R.C. 2903.22, both misdemeanors of the fourth degree. The charges stemmed from allegations that on the night of March 26, 2020, McComb shouted threats of physical harm at his half-brother, Anthony Weidenborner, and Weidenborner's fiancé, Breyana Estle, as Weidenborner and Estle were walking into their apartment building and entering their apartment. It was also alleged that McComb damaged Weidenborner and Estle's apartment door. McComb pled not guilty to the charges, and the matter proceeded to a bench trial. The following is a summary of the testimony and evidence that was presented at trial.

{¶ 3} McComb and Weidenborner are half-brothers who share the same father. They reunited approximately two years ago and initially had a good relationship with one another. For five months, McComb resided in the same Dayton apartment building as Weidenborner and Weidenborner's fiancé, Estle. During that time, McComb and

Weidenborner's relationship began to deteriorate due to McComb's having a problem with another tenant in their apartment building. Weidenborner had no problem with the tenant at issue, and this bothered McComb. The resulting tension led to the exchange of rude text messages between McComb and Weidenborner, which ultimately ruined their relationship.

{¶ 4} Around 11:00 p.m. on March 26, 2020, Weidenborner and Estle were visiting Weidenborner's father. During this visit, Weidenborner received a phone call that prompted him and Estle to return home to their apartment immediately. As Weidenborner and Estle walked into the main entrance of their apartment building, they saw McComb standing outside of his first-floor apartment. Once Weidenborner and Estle were inside the building, McComb began shouting obscenities and threats of physical harm at them as they walked by. Weidenborner and Estle ignored McComb and went upstairs to their second-floor apartment. When Weidenborner and Estle arrived at the entrance to their apartment, they noticed that the wooden front door to their apartment had been damaged.

{¶ 5} Weidenborner described the damage to the door as "miniscule." Trial Trans. (Oct. 8, 2020), p. 35. More specifically, Weidenborner testified that there was a "little bit" of a "gap where the door was supposed to be flush * * * on the door frame." *Id.* at 12. Weidenborner also testified that when he "put the key in to unlock the deadbolt it was like really hard to turn" and almost became stuck. *Id.* at 12-13.

{¶ 6} Estle, on the other hand, described the damage to the door as "substantial." *Id.* at 48-49. Estle testified that the locks to the door were damaged as they were "no longer attached to the wood." *Id.* at 42. Estle also testified that the door was open a

few "centimeters" or "inches" and could easily be pushed open. *Id.* at 41, 49. Estle further testified that the door frame was detached and broken and that the door could not be locked. *Id.* at 50-51.

{¶ 7} Although Weidenborner and Estle provided conflicting testimony as to the severity of the damage to their apartment door, they nevertheless both testified that the door was not damaged when they had left their apartment to visit Weidenborner's father 45 minutes earlier. They also both testified that Weidenborner called the police immediately after observing the damage. The Dayton Police officer to whom Weidenborner spoke over the phone, Officer Kenneth Webster, testified that Weidenborner reported that the door frame was cracked, the latch was bent, and the damage prevented the door from being locked and secured.

{¶ 8} Weidenborner testified that after he called the police, he heard McComb standing outside his and Estle's apartment door screaming more obscenities and threats of physical harm. During that time, Weidenborner testified that he heard a "loud thud" on the door and felt "a shake" in the apartment. Trial Trans. (Oct. 8, 2020), p. 16-17. Weidenborner also testified that he looked through the door's peephole and saw McComb pounding on the door with his fists at least ten times. Although he could not see McComb's feet, Weidenborner testified that he heard what he believed to be McComb kicking the door five to ten times.

{¶ 9} Estle similarly testified to hearing McComb yelling obscenities and threats of physical harm outside the apartment door after Weidenborner called the police. Estle also testified that McComb began banging and pushing on the apartment door, and she noted that she could see the door move as McComb was banging on it. Estle further

testified that Weidenborner had to hold the door shut in order to keep McComb from entering their apartment.

{¶ 10} Because of McComb's actions, Weidenborner testified that he called the police a second time to report an attempted break in. When Weidenborner advised McComb that he had called the police, McComb stopped banging on the door and left Weidenborner and Estle alone. Officer Webster and several other police officers arrived at the scene shortly thereafter.

{¶ 11} Officer Webster testified that, while at the scene, he made contact with Weidenborner and Estle and observed the damage to their apartment door. Both the police and Weidenborner took pictures of the damage. The prosecution presented Weidenborner's pictures at trial, which were admitted into evidence as State's Exhibit 1. Both Weidenborner and Estle testified that McComb caused additional damage to their door that went beyond the damage that they had initially observed when they arrived home from visiting Weidenborner's father.

{¶ 12} Following the presentation of evidence, the trial court found McComb guilty of one count of criminal damaging and two counts of menacing. The trial court sentenced McComb to a 90-day jail term for criminal damaging, all of which was suspended, and placed McComb on a period of supervised probation not to exceed one year. The trial court also ordered McComb to pay a $50 fine and court costs. The trial court further ordered McComb to complete an anger management program, to undergo a mental health assessment, and to have no contact with Weidenborner or Estle. For each count of menacing, the trial court imposed a 30-day jail term, all of which was suspended, and placed McComb on a period of supervised probation not to exceed one

year. The trial court did not impose any fines or court costs, but it did order McComb to complete an anger management program, to undergo a mental health assessment, and to have no contact with Weidenborner or Estle.

{¶ 13} McComb now appeals from his convictions, raising a single assignment of error for review.


**Assignment of Error**

{¶ 14} Under his assignment of error, McComb only challenges his conviction for criminal damaging. Specifically, McComb contends that his conviction for criminal damaging was against the manifest weight of the evidence. We disagree.

{¶ 15} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 16} Because the trier of fact sees and hears the witnesses at trial, we must defer

to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "However, we may determine which of several competing inferences suggested by the evidence should be preferred." *State v. Moore*, 2d Dist. Montgomery No. 26304, 2016-Ohio-5267, ¶ 8, citing *Lawson* at *4. "Consequently, we defer more to decisions on what testimony should be credited, than we do to decisions on the logical force to be assigned to inferences suggested by evidence, no matter how persuasive the evidence may be." *State v. Brooks*, 2d Dist. Montgomery No. 21531, 2007-Ohio-1029, ¶ 28, citing *Lawson* at *4.

{¶ 17} As previously noted, McComb is only challenging his conviction for criminal damaging in violation of R.C. 2909.06(A)(1). Pursuant to that statute no person shall, by any means, knowingly "cause, or create a substantial risk of physical harm to any property of another without the other person's consent[.]" R.C. 2909.06(A)(1). The phrase "physical harm to property" is defined as "any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." R.C. 2901.01(A)(4). "[L]oss in value can generally be inferred from observable damage and when the damage interferes with the use or enjoyment." (Emphasis and citations omitted.) *State v. Reams*, 3d Dist. Auglaize No. 2-04-28, 2005-Ohio-1085, ¶ 15. " 'Physical harm to property' does not include wear and tear occasioned by normal use." R.C. 2901.01(A)(4).

{¶ 18} In support of his appeal, McComb argues that the weight of the evidence presented at trial did not establish that he caused "physical harm to any property of another." Specifically, McComb claims that the conflicting witness testimony presented

at trial established that the physical damage to the apartment door in question existed prior to him pounding on the door. Thus, McComb asserts that the weight of the evidence simply established that he was pounding on an already damaged door, not that he caused the damage. We disagree.

{¶ 19} Although the witness testimony in this case conflicted on the issue of how severely Weidenborner and Estle's apartment door was damaged prior to McComb pounding on it, there was no conflict in the testimony as it related to McComb's causing additional damage to the door. Both Weidenborner and Estle testified that they observed the door sustain additional damage as a result of McComb's actions. *See* Trial Trans. (Oct. 8, 2020), p. 21, 24-25, and 50-51. Weidenborner testified that he observed the door being damaged as McComb was pounding on it and noted that he "was watching the door cracking and flex every time [McComb] would hit it." *Id.* at 25. Weidenborner also testified that the "inside [door] frame didn't even have a crack or anything" when he initially came home, but he later saw the frame crack as McComb was pounding on the door. *Id.* at 25-26. Estle similarly testified that the apartment door sustained additional damage as a result of McComb's pounding on the door, and she noted that the additional damage she observed was "on the inside door frame [which] got cracked when [McComb] was trying to push through." *Id.* at 51.

{¶ 20} After weighing all the evidence and reasonable inferences, we find that the weight of the evidence established that additional, observable damage was done to Weidenborner and Estle's apartment door as a result of McComb's pounding on it. *Contrast Reams*, 3d Dist. Auglaize No. 2-04-28, 2005-Ohio-1085, at ¶ 14-16 (conviction for criminal damaging was held to be against the manifest weight of the evidence where

the evidence was greatly conflicting on whether there was any new damage to the property). Therefore, we cannot say that the trial court lost its way and created a manifest miscarriage of justice by finding McComb guilty of criminal damaging, as the weight of the evidence established that McComb knowingly caused physical harm to the property of another without consent. Accordingly, McComb's conviction for criminal damaging was not against the manifest weight of the evidence.

{¶ 21} For the reasons outlined above, McComb's sole assignment of error is overruled.

## Conclusion

{¶ 22} Having overruled McComb's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Stephanie L. Cook
Andrew Sexton
Benjamin W. Ellis
Hon. Daniel G. Gehres