**[Cite as *State v. Jamison*, 2021-Ohio-1763.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

KEVIN JAMISON

    Appellant

C.A. Nos.    19AP0043
                19AP0044

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.   2018 CRC-I 000502
              2018 CRC-I 000738

DECISION AND JOURNAL ENTRY

Dated: May 24, 2021

---

HENSAL, Presiding Judge.

**{¶1}** Kevin Jamison appeals his convictions in the Wayne County Court of Common Pleas. For the following reasons, this Court affirms.

I.

**{¶2}** H.R. testified that she met Mr. Jamison through an online dating site where he went by the name Calvin. After exchanging messages with Mr. Jamison for several weeks, they decided to meet each other. Mr. Jamison told her that he was staying at a hotel in Canton and H.R. arrived there between 10:00 and 11:00 p.m. Immediately, Mr. Jamison began undressing H.R., but she resisted, telling him that she was not ready and did not want to continue. Mr. Jamison stopped and left the room, saying he was going to get something to eat as H.R. put her clothes back on.

**{¶3}** The following morning, H.R. and Mr. Jamison resumed sending messages to each other. H.R. told Mr. Jamison that was not what she meant when she said she wanted to meet up

with him and, after Mr. Jamison apologized, thought that maybe it was just a misunderstanding about what she wanted. After exchanging messages with each other for another week, H.R. and Mr. Jamison made plans to meet up again, this time at H.R.'s home.

{¶4} According to H.R., she had offered to make dinner for Mr. Jamison. When he arrived, however, he walked right inside without knocking and headed straight through the residence saying that he needed to lay down. Unaccustomed to letting people wander through her house, H.R. followed him to her bedroom where Mr. Jamison lay on the bed. When H.R. sat down on the bed next to him, Mr. Jamison started trying to kiss her and take her clothes off. H.R. testified that she told Mr. Jamison that she did not want to do that but he kept going, removing her shirt and bra. Although H.R. continued telling Mr. Jamison "no," he told H.R. to trust him and she did not know what to do. She continued following along with his actions, allowing him to rub his penis between her breasts and enter her mouth while she was on top of him. H.R. suggested that she could make dinner for them, but Mr. Jamison told her that he was not hungry, so she laid down next to him. He got above her, took down her pants, moved her underwear aside, and began performing oral sex on her. After doing so for a while, he pulled her underwear down and entered her vaginally with his penis. She is not sure whether Mr. Jamison ejaculated, but when he was finished, he took a shower and asked for something to drink. When he finished showering, Mr. Jamison asked H.R. for a ride, and H.R. complied. After H.R. dropped Mr. Jamison off, she drove to Walmart for some trash bags and also ended up buying a new outfit. She attempted to text Mr. Jamison, but he did not text her back. That evening she slept on her couch. The next day, H.R. called her mother and told her about what had happened. Her mother persuaded her to go to a hospital where she met with a sexual assault nurse examiner. Law enforcement was able to identify that "Calvin" was Mr. Jamison from DNA on the glass he had used at the house.

{¶5} The Grand Jury indicted Mr. Jamison for one count of rape and one count of sexual battery. It also indicted him for the same offenses against another woman, but the counts were severed. While awaiting trial, Mr. Jamison was also indicted for failing to comply with the order or signal of a police officer and other related offenses. The offenses involving H.R. were tried to a jury, which found Mr. Jamison guilty of both offenses. Mr. Jamison subsequently pleaded guilty to the failure to comply offense, and the trial court found him guilty of it. After merging the rape and sexual battery offenses, the court sentenced Mr. Jamison to 11 years imprisonment for rape and three years for failure to comply, which it ordered to run consecutive for a total sentence of 14 years. Mr. Jamison has appealed, assigning six errors.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY NOT FINDING THAT THE EVIDENCE WAS INSUFFICIENT TO CONVICT JAMISON OF RAPE.

{¶6} In his first assignment of error, Mr. Jamison argues that there was insufficient evidence to support his conviction of rape. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶7} The jury found Mr. Jamison guilty of violating Revised Code Section 2907.02(A)(2). That section provides that "[n]o person shall engage in sexual conduct with

another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct[,]" in part, "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *." R.C. 2907.01(A). "'Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Section 2907.02 "requires only that minimal force or threat of force be used in the commission of the rape." *State v. Dye*, 82 Ohio St.3d 323, 328 (1998).

{¶8}     Mr. Jamison notes that H.R. testified that he made her "want to suck his penis[,]" that she helped him pull her pants down by arching her back, and that he merely told her that what was happening was ok and to trust him. He argues the evidence shows that H.R. helped him remove her clothes and willingly performed oral sex on him while she was on top of him. He argues that he did not have any weapons, that he did not use any force, that he did not make any threats, and that H.R. did not suffer any injuries. He further argues that, considering H.R. weighs 80 pounds more than him, it would have been difficult for him to physically overpower her.

{¶9}     Much of Mr. Jamison's argument goes to the weight of the evidence not the sufficiency. In *State v. Eskridge*, 38 Ohio St.3d 56 (1988), the Ohio Supreme Court determined that removing a victim's underwear was an "act[ ] of compulsion and constraint that [was] independent of the act of rape." *Id*. at 58. In this case, H.R. testified that Mr. Jamison pulled her underwear aside to perform oral sex on her and pulled it down in order to engage in vaginal intercourse with her. Under *Eskridge* and *Dye*, we conclude that, when viewed in a light most favorable to the prosecution, those actions were sufficient to constitute the use of force under Section 2907.02(A)(2). *See also State v. Mason*, 82 Ohio St.3d 144, 163-164 (1998) (including fact that victim's jeans and underwear were pulled down below her knees as evidence of use of

force).  We, therefore, conclude that Mr. Jamison's conviction for rape is supported by sufficient evidence.  Mr. Jamison's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

JAMISON'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10}  In his second assignment of error, Mr. Jamison argues that his convictions are against the manifest weight of the evidence.  When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side.  *Thompkins*, 78 Ohio St.3d 380, at 387.  An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases.  *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶11}  Mr. Jamison argues that H.R. was not credible.  He contends that her behavior was not consistent with someone who has just been raped, noting that, instead of going to the police station after dropping him off, she went shopping for a new outfit.  She also waited to see if he needed another ride later that night.  He argues that what actually happened was H.R. went along with the sexual activity willingly, helping him take her shirt and pants off, and that her story only changed after he failed to return her text messages.  Mr. Jamison notes that H.R. did not have any bruising from the sexual activity even though she testified that she bruises easily and had some older bruises on her body at the time she was examined at the hospital.  Mr. Jamison also argues

that H.R. lied during her testimony about whether it was her or her husband who had filed for divorce and that this shows her overall untrustworthiness. Mr. Jamison also argues that the evidence collected was inconsistent with what H.R. said happened. Specifically, he notes that the only place where his DNA was found was on her underwear despite her claim that they engaged in a wide range of sexual conduct. Investigators also discovered no blood anywhere on the bed even though H.R. claimed that she was menstruating when it happened. Mr. Jamison further argues that H.R. appeared confused about what occurred, stating at one point that she was living in an apartment and another time in a house. Finally, Mr. Jamison argues that H.R. was being coached by her mother, noting that the court had to admonish the mother to stop making signs and gestures to H.R.

{¶12} The credibility of the witnesses is primarily for the trier of the facts to determine. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29. In this case, there was no evidence presented regarding the typical behaviors of a victim of rape. The State argues that H.R.'s actions exhibited that she did not want to return to her home right away after dropping Mr. Jamison off and that she was unable to sleep in the bed where the alleged offenses occurred, choosing to try to sleep on the couch instead. In addition, H.R. was then unable to sleep and ended up trying to get in touch with her contacts, finally deciding to go for another drive around 4:00 a.m.

{¶13} Regarding H.R.'s testimony, as Mr. Jamison had identified, she was unable to remember some of the details of her unrelated divorce case and could not remember some of the particulars of the sexual activity such as how long different phases of it lasted, whether her

underwear was up or down during some of the different acts, and when Mr. Jamison may or may not have ejaculated. Regarding the DNA evidence, we note that H.R. had taken a shower and changed her clothes between when the sexual activity occurred and when she was examined at the hospital. Finally, although the court admonished H.R.'s mother, it simply explained that spectators had to be unemotional and that she could not attempt to support H.R. while she was testifying. Mr. Jamison did not object to the mother's continued presence or allege at the time that the mother was attempting to coach H.R. as opposed to simply reacting to H.R.'s testimony.

{¶14} Upon review of the record, despite some minor inconsistencies in H.R.'s testimony, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that Mr. Jamison's convictions should be overturned. Mr. Jamison's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE COURT COMMITTED AN ERROR WHEN SENTENCING JAMISON TO MAXIMUM SENTENCE, TOTALING FOURTEEN YEARS IN PRISON.

{¶15} In his third assignment of error, Mr. Jamison argues that the trial court incorrectly sentenced him to fourteen years imprisonment. In reviewing a felony sentence, "[t]he * * * standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶16} A sentencing court has "full discretion to impose a prison sentence within the statutory range" and is not "required to make findings or give their reasons for imposing * * * more than the minimum sentence[ ]." *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus. "[N]evertheless, * * *, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

{¶17} Mr. Jamison argues that the trial court failed to properly consider the required sentencing factors when it imposed his sentence. He argues that there was nothing about the offenses that made them more serious in nature or the worse form of the offense. He also argues that some statements by the court suggest that it considered the rape count that had been severed from the case, even though he was acquitted of that alleged offense.

{¶18} The sentencing hearing indicates that the trial court reviewed presentence investigation reports that had been prepared regarding both offenses. Those reports, however, have not been made part of the appellate record. It is the appellant's responsibility to ensure that the record on appeal contains all matters necessary to allow this Court to resolve the issues on appeal. *State v. Daniel*, 9th Dist. Summit No. 27390, 2014-Ohio-5112, ¶ 5, citing App.R. 9. This Court has consistently held that, if the appellant has failed to provide a complete record to facilitate appellate review, we are compelled to presume regularity in the proceedings below and affirm the trial court's judgment. *Id.*, citing *State v. McGowan*, 9th Dist. Summit No. 27092, 2014-Ohio-2630, ¶ 6.

{¶19} The information in the presentence investigation reports would have directly influenced the trial court's assessment of the seriousness of the offenses and its determination of the minimum sentences required to fulfill the purposes of felony sentencing. *State v. Shelton*, 9th Dist. Lorain No. 18CA011368, 2019-Ohio-1694, ¶ 8. In cases such as this where the presentence investigation report is necessary to enable an appropriate review of the propriety of the sentence, Mr. Jamison's failure to ensure that the record includes those reports requires this Court to presume regularity in the sentencing proceedings. *State v. Yuncker*, 9th Dist. Medina No. 14CA0068–M, 2015–Ohio–3933, ¶ 17, citing *Daniel* at ¶ 5; *McGowan* at ¶ 6. Accordingly, this Court cannot conclude that there is clear and convincing evidence that Mr. Jamison's sentence is contrary to law. Mr. Jamison's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY PERMITTING OTHER ACTS EVIDENCE TO
BE PRESENTED BY THE STATE.

{¶20} In his fourth assignment of error, Mr. Jamison argues that the trial court incorrectly admitted other acts evidence by allowing a witness to explain that the State obtains DNA profiles when someone is arrested, implying that he must have been arrested previously. Evidence Rule 404(B) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith * * * [but may] * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Graham*, 162 Ohio St.3d 435, 2020-Ohio-6700, ¶ 72. "The court is precluded from admitting improper character evidence under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose." *Id*.

{¶21} A police officer testified that they learned that Mr. Jamison was the individual who had been with H.R. because there had been "a hit confirmation through BCI through CODIS which is a system that allows once you've been arrested your DNA is in the system and any time DNA is gathered from another crime they compare that DNA to anything in CODIS." We note, however, that Mr. Jamison did not object to the officer's testimony. "A defendant forfeits appellate review of an alleged error at trial if [he] fails to contemporaneously object to that error at trial." *State v. McCallum*, 9th Dist. No. Medina No. 08CA0037-M, 2009-Ohio-1424, ¶ 19; *Grantham* at ¶ 64. Because Mr. Jamison does not argue plain error on appeal, we will not address his other acts argument. *McCallum* at ¶ 19. Mr. Jamison's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED WHEN AND PREJUDICED JAMISON'S RIGHT TO A FAIR TRIAL BY FAILURE TO DECLARE MISTRIAL WHEN CUMULATIVE ERRORS DEPRIVED JAMISON OF A FAIR TRIAL.

{¶22} In his fifth assignment of error, Mr. Jamison argues that there were multiple errors during that trial that collectively deprived him of a fair trial. "Under the doctrine of cumulative error, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *State v. Froman*, __ Ohio St.3d __, 2020-Ohio-4523, ¶ 156, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 223.

{¶23} Mr. Jamison argues first that a police officer was incorrectly allowed to testify as an expert witness about whether H.R. is developmentally delayed. The officer said that it was evident to him that H.R. was slightly developmentally delayed because she was unfamiliar with some normal social concepts even though she was 36 years old and because she told him that she would never drive to Canton by herself. Second, Mr. Jamison points to H.R.'s mother's alleged

coaching of H.R. Third, he argues that the court improperly allowed a juror to remain on the jury even after the juror realized that she knew H.R. Specifically, the juror explained that H.R. had cut her husband's hair and had purchased her a birthday drink at a local restaurant only a week before the trial. Finally, Mr. Jamison argues that the nurse examiner should not have been allowed to testify because Mr. Jamison had previously had a sexual relationship with her and had met her through the same dating site as H.R.

{¶24} Regarding the officer's testimony, the State did not represent that the officer was an expert on intelligence. His testimony was merely about the inferences he drew based on his conversation with H.R., which is permitted opinion testimony under Rule 701. Regarding H.R.'s mother, although the mother was displaying emotion based on H.R.'s testimony, there is no indication in the record that she was attempting to coach H.R. Regarding the juror who recognized H.R., both parties were able to question the juror, who stated she was only an acquaintance of H.R. and could remain fair and impartial. Mr. Jamison had an opportunity to examine the juror about her connection to H.R. and did not object to her remaining on the panel. Finally, regarding the nurse examiner, we note that Mr. Jamison's identity was not known at the time that she examined H.R. and that the State's questioning of the nurse was confined to the evidence collected during the examination. The only time that she offered an opinion about what might have occurred was in response to Mr. Jamison's questioning.

{¶25} Upon review of the record, we conclude that Mr. Jamison has failed to establish that the trial court committed multiple errors in this case. Accordingly, the doctrine of cumulative error is not applicable. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132. Mr. Jamison's fifth assignment of error is overruled.

ASSIGNMENT OF ERROR VI

JAMISON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶1}     In his sixth assignment of error, Mr. Jamison argues that that his trial counsel was ineffective.  To prevail on a claim of ineffective assistance of counsel, Mr. Jamison must establish that:  (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A deficient performance is one that falls below an objective standard of reasonable representation.  *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus.  A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  To establish prejudice, Mr. Jamison must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different.  *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶26}   Mr. Jamison argues that his counsel should have sought to prevent the juror who knew H.R. from remaining on the jury because she had received a gift from H.R. and had reason to know H.R.'s character.  He also argues that his counsel should have moved for a mistrial based on the conduct of H.R.'s mother, alleging that the mother was clearly coaching H.R.

{¶27}   Mr. Jamison's counsel asked the juror whether she knew H.R.'s "reputation in the community or anything like that about her" and the juror replied that she did not.  He also asked the juror whether anything about her relationship with H.R. would impair her ability to evaluate

the evidence critically and the juror answered that she would "base everything off of evidence and use my best judgment by going off of what is seen and heard today." The court then asked whether the juror would feel comfortable having herself as a juror if she was in the defendant's place and the juror replied that she would not, but again emphasized that she would "use [her] best judgment by evidence only." Following the examination of the juror, Mr. Jamison's counsel did not object to letting the juror continue to serve.

{¶28} Defense counsel asked appropriate questions of the juror about her potential bias and was satisfied from her answers that the juror could remain impartial. There is nothing in the record to suggest that his assessment was inaccurate or that his failure to object constituted deficit representation.

{¶29} Regarding the conduct of H.R.'s mother, the court suggested that the mother was "shaking your head, making signs, whatever" and that he did not know if she was doing it intentionally. The court noted that many times spectators make gestures and that they may not even be conscious of it. It instructed the mother that, when someone was on the stand, she needed to have a poker face on and not make any gestures or emotional outbreaks. Following a response that was not captured by the court reporter, the court stated that it did not want to get into a lengthy discussion and that it recognized that H.R. was her daughter and that the testimony was difficult to hear, but that the mother had to be unemotional and not display anything, recognizing it was easier to say than do. The court also mentioned that H.R. might be looking for emotional support, but that the mother could not react and could not try to help her out.

{¶30} The exchange with H.R.'s mother shows that she may have been attempting to lend emotional support to H.R. while H.R. was testifying and may have been reacting emotionally to the testimony H.R. was giving. There is no indication, however, that H.R.'s mother coached her

daughter's testimony. Accordingly, upon review of the record, we cannot say that Mr. Jamison's counsel's performance was deficient for failing to move for a mistrial based on the conduct of the H.R.'s mother. Mr. Jamison's sixth assignment of error is overruled.

III.

**{¶31}** Mr. Jamison's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, J.
SUTTON, J.
CONCUR.


APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.