[Cite as *State v. Wolff*, 2022-Ohio-1086.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 21CA011727 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SAMUEL WOLFF | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 19CR101430 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2022

CARR, Judge.

{¶1} Defendant-Appellant Samuel Wolff appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} In November 2019, an indictment was filed charging Wolff with one count of kidnapping in violation of R.C. 2905.01(A)(4), one count of rape in violation of R.C. 2907.02(A)(1)(b), and one count of rape in violation of R.C. 2907.02(A)(2). All three counts included a sexual motivation specification, and the latter two included a sexually violent predator specification.

{¶3} Wolff waived his right to a jury trial and the matter proceeded to a bench trial. The trial court dismissed the kidnapping charge pursuant to Crim.R. 29 and found Wolff guilty of Count 3; the accompanying sexual motivation specification was dismissed prior to opening statements. Although the record disclosed evidence that would support a finding of guilty on

Count 2 under R.C. 2907.02(A)(1)(b), as there was evidence that the victim was under the age of 13, the trial court found Wolff not guilty of that charge. That issue is not before us. A separate hearing was conducted concerning the sexually violent predator specification. Following the hearing, the trial court found Wolff not guilty of the specification.

{¶4} The matter proceeded to sentencing. The trial court sentenced Wolff to an indefinite sentence of a minimum term of 11 years and a maximum term of 16.5 years in prison. Wolff has appealed, raising two assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶5} Wolff argues in his first assignment of error that the guilty verdict is based upon insufficient evidence. Specifically, Wolff argues that the State failed to prove the element of force. We will limit our analysis accordingly.

{¶6} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

**{¶7}** R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "A victim need not prove physical resistance to the offender in prosecutions under this section." R.C. 2907.02(C).

**{¶8}** Sexual conduct "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶9}** Force "means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56 (1988), paragraph one of the syllabus (involving a parent-child relationship); *see also State v. Dye*, 82 Ohio St.3d 323, 328-329 (1998) (concerning non-parental authority figures). However, the statute "requires only that minimal force or threat of force be used in the commission of the rape." *State v. Jamison*, 9th Dist. Wayne Nos. 19AP0043, 19AP0044, 2021-Ohio-1763, ¶ 7, quoting *State v. Dye*, 82 Ohio St.3d 323, 328 (1998). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one

of the syllabus. "Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." (Internal quotations and citations omitted.) *Dye*, 82 Ohio St.3d at 327.

{¶10} Given the testimony of the victim in this matter and viewing it in a light most favorable to the State, we cannot say that Wolff has demonstrated that the State failed to prove beyond a reasonable doubt the requisite element of force.

{¶11} The victim, who was 12 years old at the time of trial, and 11 years old at the time of the events at issue, testified to the following events. On August 17, 2019, around 3:00 or 4:00 p.m., the victim rode his bicycle to his friend Michael's house to go swimming. Michael, the victim, Michael's sister, and Wolff were all in the pool. While the victim did not know Wolff, other evidence in the record makes it clear that Wolff was a friend of Michael's family and stayed over at Michael's house most weekends.

{¶12} After swimming, they all got out of the pool and sat on the patio for about thirty minutes. The victim then followed Wolff into the house to change clothes. Wolff told the victim that Wolff would show the victim where to change. According to the victim, Michael's mom and some of her friends were in the living room. The victim was going to go into the bathroom to change, but Wolff told the victim to go change in the bedroom. That room was later identified as Michael's bedroom. There was also evidence presented that Wolff also slept in that room when he stayed over.

{¶13} The victim and Wolff entered the bedroom. The victim testified that a little girl was asleep on a bed in the room. Wolff then approached the door and seemed like he was going to leave; however, he closed the door and put a small dresser or shelf in front of the door. Wolff

told the victim to, "Be quiet or else." The victim felt threatened. Wolff walked towards the victim and got on his knees. Wolff then pulled down the victim's shorts and underwear. Wolff then grabbed the victim's penis, stroked it, and put it in Wolff's mouth. The victim felt afraid but did not say anything because Wolff had told the victim to "[b]e quiet[.]" Wolff stopped after the door creaked and opened a little. The victim heard Michael's voice and saw Michael's face on the other side of the door. Wolff told the victim to get dressed. Wolff then moved the dresser or shelf back and told the victim to leave. The victim then left Michael's house as quickly as he could and went home.

{¶14} We conclude that the foregoing evidence, when viewed in a light most favorable to the State is sufficient to demonstrate force under the circumstances before us. We note that courts, including this one, have concluded that pulling down the victim's pants and/or underwear can constitute sufficient force. *See Jamison,* 2021-Ohio-1763, at ¶ 9; *State v. Dyer*, 2d Dist. Montgomery No. 28671, 2021-Ohio-2329, ¶ 21; *State v. Minton*, 4th Dist. Adams No. 15CA1006, 2016-Ohio-5427, ¶ 72-76; *State v. Clarke*, 8th Dist. Cuyahoga No. 94207, 2010-Ohio-5010, ¶ 23-24. Moreover, there was evidence presented that the victim was threatened with force; Wolff told the victim to, "[b]e quiet, or else." "As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established." *Dye*, 82 Ohio St.3d at 327; *see also State v. Baughn*, 12th Dist. Clermont No. CA2020-04-020, 2020-Ohio-5566, ¶ 17 ("A child's will can be overcome by fear and duress when an important figure of authority tells the child to do something, and commands the child not to tell anyone about it.").

{¶15} Wolff's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH

AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶16} Wolff asserts in his second assignment of error that the guilty verdict is against the manifest weight of the evidence. Wolff argues that the victim lacked credibility and that there were other people in the home and none of them reported hearing or seeing anything.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶17} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id.*

{¶18} In addition to the testimony discussed above, there was evidence presented that, approximately an hour after returning home, the victim informed his mother of the general nature of what had happened. The victim's mother then called the police. The Lorain County Sheriff's Department responded and took a statement concerning the assault. Some of the statements the

victim made to police could be viewed as inconsistent with the victim's trial testimony. For example, during the initial interview, the victim indicated that he had not been hurt or threatened and did not mention that Wolff put his mouth on the victim's penis. The victim also told police that the victim pulled down his own shorts and underwear at the demand of Wolff.

{¶19} The deputy from the sheriff's department also went to Michael's house to locate Wolff. When Wolff learned the police were looking for him, he proceeded outside to the back of the house and sat down in bushes in the backyard. Ultimately, Wolff came out and spoke to police. Wolff appeared to be under the influence of alcohol and admitted to having approximately four beers. Wolff also acknowledged being "in the bedroom with someone." When asked specifically about the incident, he was not very forthcoming and stated that "I told him I didn't want to see that."

{¶20} During the investigation, the sheriff's deputy viewed the bedroom at issue and noted that, based upon indentations in the carpet, it appeared that a shelf had been moved. The next day, the victim underwent a forensic medical examination. Inter alia, samples were taken from the victim's penis. Analysis of those samples by the Ohio Bureau of Criminal Investigation revealed the presence of amylase. Amylase is present in high amounts in saliva but is also present in other body fluids. The test used is a presumptive test for the presence of saliva but is not confirmatory. The DNA recovered from the samples contained a mixture which was consistent with two contributors: the victim and Wolff. The estimated frequency of occurrence for the non-sperm fraction for the profile that matched Wolff's was rarer than 1 in 1 trillion unrelated individuals.

{¶21} Wolff also presented witnesses in support of his defense. Michael's mother testified that she was home that day but fell asleep on the couch in the living room. She woke up

approximately thirty minutes before the police arrived at her home. Michael, who was 15 at the time of trial, also testified. Michael's mom averred that Michael has autism, ADHD, and has difficulty making friends. Michael's testimony at trial was somewhat limited; however, his statement to police was admitted as evidence. In that statement, Michael indicated that Wolff changed in the bathroom and the victim changed in Michael's bedroom. Michael maintained that Wolff then went into Michael's bedroom to get Wolff's shoes and that it was the victim who moved the shelf in front of the door.

{¶22} Finally, Michael's mother's niece Destiny testified. Destiny asserted that when they all came inside after being on the porch, she and a couple other people sat at the kitchen table. According to Destiny, Wolff was only gone a couple minutes. He went into Michael's bedroom, grabbed his clothes, went into the bathroom, came out, and then sat down at the kitchen table to play cards with the people at the table. Destiny did not see the victim. None of Wolff's witnesses reported seeing anything inappropriate or hearing anything concerning.

{¶23} While there were what could be perceived as inconsistencies between the victim's trial testimony and some of his statements to police, the trial court was in the best position to resolve the conflicting evidence. "This Court has held that in cases where some conflicting evidence may exist, this Court will not disturb the [the fact-finder's] factual determinations because the [the fact-finder] is in the best position to determine the credibility of the witnesses during trial." (Internal quotations and citations omitted.) *State v. McPherson*, 9th Dist. Lorain No. 08CA009377, 2009-Ohio-1426, ¶ 39. Further, we cannot say that the trial court was unreasonable in its credibility determinations. Here, the forensic evidence corroborates important aspects of the victim's testimony, i.e. that Wolff's mouth came in contact with the victim's penis. As to Wolff's claim that the verdict is against the manifest weight of the evidence because no one

else in the home heard or saw anything inappropriate, we are mindful that there was evidence that Wolff told the victim to "[b]e quiet or else." Moreover, Wolff and the victim were in the room with the door closed. Thus, there is a reasonable explanation as to why other individuals in the house did not hear or see anything inappropriate.

{¶24} After a thorough and independent review of the record, we cannot say that Wolff has demonstrated that the fact-finder lost its way in finding Wolff guilty. Wolff's second assignment of error is overruled.

III.

{¶25} Wolff's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.